JOHN R. GWYNN AND CHARLES R. GWYNN, TRADING UNDER THE FIRM OF GWYNN & CO., vs. JOSIAH LEE AND OTHERS. *June* 1850.

A *bona fide* holder of a negotiable note for a valuable consideration, without notice of facts which affect its validity as between antecedent parties, if he

takes it by endorsement before it becomes due, acquires a valid title and may recover upon it, although, as between antecedent parties, the transaction may be invalid.

The defendant received a negotiable note, as security for the payment of money borrowed at the time, of him, by the endorsers of the note, without notice that it had been fraudulently obtained from the makers. HELD, that he could recover upon it.

Before the makers can ask relief in equity against such a note, they must show that they have a defence of which they cannot avail themselves at law.

The defendant is not bound to exhaust his remedies against other securities, placed in his hands at the same time for the same debt, before he can enforce payment of such note.

It is no defence that the debt for which the note was pledged as security was tainted with usury; the makers of the note cannot, for this reason, avoid the contract.

Before the act of 1845, ch. 352, if the debtor, or any person who had a right to represent him, asked in chancery to be relieved from the payment of any usurious debt, the principal and legal interest must be paid.

This act will not permit any person to avoid the contract in any suit, whether in law or in equity; the principal and legal interest are still due and to be paid, and the creditor is entitled to all the securities which he has, just as if, by the original terms of the contract, it had been to pay the principal, with legal interest.


APPEAL from the *Court of Chancery.*

The facts of this case are fully stated in the following opinion of the chancellor, (JOHNSON,) accompanying his order dissolving the injunction obtained by the appellants, the complainants below.

" This cause, though not very important with reference to the amount involved in its decision, is yet not destitute of interest to the commercial community.

It appears, that some time in the month of April, 1848, the complainants, trading under the firm of *Gwynn and Company*, placed in the hands of *George Baughman*, of the firm of *Baughman, Nicholson and Cannon*, their promissory note for $1,227.33, made payable to the last named firm, dated the 9th day of that month, and payable eight months after date, and, as the complainants allege, the note so made and delivered by them to *Baughman*, was made and delivered upon the offer

and agreement of *Baughman* to procure the same, to be discounted for their use at some bank in *Baltimore*. *Baughman* did not comply with this alleged agreement, but on the contrary, on the 11th of September, 1848, three months before the maturity of the note, the firm of which he was a member, borrowed from the defendant *Lee* \$21,000, and lodged, and hypothecated with him, as security for the re-payment of the money, this note, with many others, a list of which is given in his answer. Of these notes, it appears some have matured and remain unpaid, and that others have not yet matured, so that a considerable portion of the money loaned is still due.

There is nothing to show that *Lee*, the defendant, had any knowledge or any reason to suspect when he received this note as stated, that it had been procured by fraud or misrepresentation, or was without consideration, and in his answer he expressly denies, that he had any such knowledge or suspicion, and denying all belief in the allegations of the bill charging such fraud and want of consideration, the defendant avers himself to be a *bona fide* holder of the note, for a full and valuable consideration, and without notice.

The bill charges, that the note was pledged by *Baughman*, *Nicholson and Cannon*, to the defendant *Lee*, to secure the payment of a large sum of money which they had borrowed of him, and upon which he charged and exacted from said firm usurious interest. The bill does not allege that the defendant knew of the circumstances under which the note was given to *Baughman*, nor does it charge that complainants gave *Lee* notice thereof, until after he had received the same from the payees, as security for the loan made to them, nor is there any allegation that steps were taken by the complainants, by publication or otherwise, to caution the public against taking the note. It is charged, that to secure the money borrowed by *Baughman*, *Nicholson and Cannon*, from the defendant, they pledged with him securities to a larger amount than the loan, and the bill insists, that *Lee* is bound, before he can proceed against the complainants upon their note, to apply and exhaust the other securities. In answer to this charge the respondent

says, that several of the makers of the other notes pledged to him have refused to pay them, and that some of them insist. that they were lent to *Baughman, Nicholson and Cannon*, and that after defendant is repaid his loan, with interest, they are entitled to share in the surplus, if any there be.    The complainants further in their bill insist, that even if the defendant can hold said note as a security at all, it can only be for so much as might be due him, after deducting all the interest paid him by said firm on all their transactions, over and above the interest allowed by law, and they call upon the defendant to state the amount of such excessive interest paid within the period of the three last years.

In answer to this ground of equity, the defendant says, that the loan already spoken of for $21,000, and a further loan to the same parties of $4,000, on the 16th of August, 1848, and to secure the re-payment of which, other notes were hypothecated with the defendant, are the only two transactions of business he has with *Baughman, Nicholson and Cannon*.    That he claims to hold these last notes, as also those pledged for the payment of the $21,000, before mentioned, as security for the re-payment of the two sums, principal and interest, and such costs and expenses as he may incur by the resistance of the makers of the notes to pay the amount of their liabilities.

And denying the right of the complainant to interrogate him, or his obligation to answer to the charge of usury, the defendant says, "he was always ready and willing, and is now ready and willing, to surrender to the persons entitled to receive the same, all the securities which he holds upon the payment to him of the amount of *Baughman, Nicholson and Cannon's* indebtedness to him, with legal interest thereon, and the costs and expenses," &c.    But he claims to hold the said securities until he is so repaid, and to adopt such measures as he may be advised, and as may be necessary to recover the sums due upon said securities, until he shall be reimbursed his principal legal interest, and costs and expenses.

The injunction which was ordered upon the filing of this bill, to restrain the defendant *Lee* from passing away the note

of the complainants, or from suing them to recover the amount thereof, was not granted upon the alleged fraud charged to have been practised by *Baughman* upon the complainants in obtaining the note, because it was not charged that the defendant had any knowledge of such fraud or imposition at the time he received it, but upon the ground, as I understood the bill, that it was pledged with the defendant to secure a pre-existing debt, due from *Baughman, Nicholson and Cannon*, to him, the allegation being that it was placed with the defendant by those parties, "to secure the payment of a large sum of money which they had borrowed from him," which language was understood by me to mean, which they had borrowed prior to the pledge, and with that understanding I thought he might not be entitled to all the rights which attach to a party who had taken a negotiable security *bona fide* and without notice, and in the usual course of business. *Story on Promissory Notes, sec. 195, note 1.*

If *Baughman* committed a fraud or practised an imposition upon the complainants, that was a matter between him and them, with which the defendant *Lee* had nothing to do, and for which he could in no way be responsible, unless he had notice thereof when he received the note. *Baughman* was trusted by, and made the agent of the complainants, and if he abused their confidence, surely they, and not third parties, ignorant of the fraud, must bear the consequences, and their claim to the protection of the court was the weaker, seeing that after they discovered the imposition, they did not take the usual and proper course to warn the public, by advertising or in some other way. Unquestionably as between them and innocent third parties, who might obtain their note before its maturity, and in the ordinary course of business, there could not be a doubt as to who should bear the loss.

There can be no doubt that a *bona fide* holder of a negotiable instrument, for a valuable consideration without any notice of facts which affect its validity as between the antecedent parties, if he takes it by endorsement before it becomes due, acquires a valid title, and may recover upon it, although as be-

tween the antecedent parties, the transaction may be invalid. "This is a doctrine," *Mr. Justice Story* says, "so long and so well established, and so essential to the security of negotiable paper; that it is laid up among the fundamentals of the law." And as little doubt is there that the holder of such paper, before it is due, is not bound to prove that he is a *bona fide* holder for a valuable consideration, without notice, for the court will presume that, in the absence of rebutting proof. It is true, that if the other party has established the want, or failure, or illegality of the consideration, or that the note has been lost or stolen before it came to the possession of the holder; it may then become incumbent on him to show that he has given value for it, for under such circumstances, he ought not to be placed in a better situation than the prior parties through whom he obtained it. *Story on Promissory Notes, secs.* 195 *and* 196, and the note to these sections.

The question then is, has the defendant, *Lee,* shown for the purposes of this motion, that he has given value for this note? The answer says, speaking responsively to the bill, that upon the security of this note before it became due, and of other notes, a list of which is given, he, at the time he received it, loaned the holders twenty-one thousand dollars, and that he is a fair and *bona fide* holder for a full and valuable consideration without notice.

The argument of the complainant's counsel is, that as the charge of usury has not been answered, it must, upon this motion, be assumed to be true, and that consequently the defendant cannot be regarded as a *bona fide* holder for value, and the note being stated in the bill to have been procured by fraud, which statement must also, as it is said at this stage of the cause, be treated as true, the defendant is in no better situation than the prior party from whom he obtained it.

The defendant, it is true, does not deny the usury charged against him, insisting that he is under no obligations to do so, but he says he gave value for the note, and that he is now ready and willing, and always has been ready and willing to surrender the securities in his hands, including this note, upon

the payment of the principal sum loaned by him, with legal interest and his costs.

The act of 1845, ch. 352, has made a material change in the law of this State upon the subject of usury. Prior to that act, and under the law of 1704, ch. 69, securities tainted with usury, were utterly void, and if the party lending money on usurious interest, attempted to recover it by legal or equitable proceedings, he would be wholly defeated on the fact of usury being established. Under that act, however, if the debtor applied to chancery for relief, he would only be relieved upon paying the principal sum due with the legal interest thereon. In other words, he would be required to do equity before he could ask for equity, which only required he should be relieved from the excessive interest.

But the act of 1845, extends the equitable principle, and provides, that in actions both at law and in equity, brought by the creditor upon the usurious instrument, the defendant, the debtor, shall be made to pay the principal debt with interest thereon, at the rate of six *per cent. per annum.* So that now, usurious instruments are not under any circumstances avoided, but are made valid securities in all courts, and no matter by whom proceedings may be instituted upon them, to the extent of the principal sum and six *per cent.* interest.

Can it be said then, assuming for the sake of the argument, that the defendant, *Lee,* contracted with *Baughman, Nicholson* and *Cannon,* for the payment of more than six per cent. interest, that he is not a holder for value of this note? His contract is not void, but is a good and valid contract to the extent of the sum loaned, and six *per cent.* interest, and that is all he claims. He says, and his answer is to be taken as true, being responsive to the bill, that he gave value for this note paid at the time he received it; and it is no answer to say that his contract with the parties from whom he received it, was usurious, because if true, that does not avoid the contract which is a valid security to the extent that he claims to recover upon it. He must therefore be looked upon as a holder for value, and entitled as such to avail himself of the note taken without notice, and before it was due to the extent he claims.

It may be, that since the repeal of the 3rd section of the act of 1704, ch. 69, which inflicts a forfeiture for usury, a defendant cannot excuse himself from answering the charge of usury when the justice of the case requires him to answer. But when, as in this case, the defendant claims no more than his principal and legal interest, to which, under the act of 1845, ch. 352, he is entitled, whether he has contracted for the payment of usurious interest or not, there would seem to be no motive for compelling him to answer, if he declines voluntarily to do so. *Cui bono*, force him to answer a charge which can have no influence upon the judgment of the court or the rights of the parties? It is also objected by the complainants that the defendant has not produced his accounts with *Baughman, Nicholson* and *Cannon*, for the last three years prior to the time of filing this bill, and stated the amount of excessive interest paid or supposed to have been paid by them to him within that period.

But the answer does give a statement of the only two transactions he has with those parties at this time, and I cannot see how the complainant can found an equity upon transactions past and settled. The legality or the illegality of former dealings between these parties, which have been settled between themselves, can have nothing to do with the merits of this particular transaction, and are not, therefore, proper subjects of inquiry. The fate of this controversy must depend upon the considerations which have been adverted to, and which affect it as an independent transaction, and it is to be determined without reference to anterior dealings with which it has no connection.

My opinion, therefore, is, that the equity upon which the injunction was granted, has been removed by the answer, and it must therefore be dissolved.''

The complainants appealed.

The cause was argued before DORSEY, C. J., MAGRUDER, MARTIN and FRICK, J.

By ADDISON and DULANEY for the appellants, and
By GLENN and PRATT for the appellee.

MAGRUDER, J., delivered the opinion of this court.

We agree with the chancellor that the injunction which the complainants had obtained in this case, ought not to be continued.

It is not to be denied that *George Baughman*, according to the statement in the bill of complaint, practiced a fraud upon the complainants; but we are not authorised to believe, that of such fraud the defendant, *Lee*, had notice at the time that the note of the complainants was received by him.

The note in controversy, we must take it for granted, was placed in the hands of the defendant *Lee*, as a security for the repayment of money borrowed at the time, of the latter, and without any reason to believe, that every cent of the money for which it was given, had not been received by the drawers. It was their own fault that it was in the power of the possessor of the note to make the improper use, which they say he did make, of it. The loss to be sustained, if any loss is to be sustained, the complainants themselves must bear, unless they can shew that the defendant *Lee* cannot claim the amount of it. Moreover, they must show some reason why they ask the aid of a court of equity; that they have a defence, of which, for some reason or other, they cannot avail themselves at law. This has not been shown.

The bill charges that the note in controversy was pledged to the defendant *Lee*, as a security for a debt claimed by him, and which it is charged was tainted with usury. Granting this to be the case, it surely cannot be insisted that, for this the complainants can avoid the contract. Before our act of Assembly 1845, chap. 352, if the debtor, or any person who had the right to represent him, asked in chancery to be relieved from the payment of any usurious debt, the principal and legal interest must be paid. The act of Assembly will not permit any person to avoid the contract, in any suit, whether in law or in equity. The principal and legal interest, are still due and to be paid, and the creditor is entitled to all the securities which he has, just as if by the original terms of the contract, it had been to pay the principal with legal interest.

It is not necessary, then, for us to inquire, whether, as the case comes before us, we must take it for granted, that the transaction between *Lee* and his debtors, was one tainted with usury ?

The act of 1845, has certainly made a great change in the law of usury.   It is not for us to say, whether in this respect the law is improved, or to deprive the creditor of the benefit of that law.

But why should the defendant *Lee* be required, before he claims of the complainants the amount of their note, to exhaust any remedy which he may have by reason of other securities placed in his hands for the money due to him?   If he attempted to recover the amount due to him by a suit upon these other notes, surely these debtors might, with equal propriety insist, that he should first seek to recover the amount due from the complainants on their note.   Surely in this suggestion we can find no ground for a continuance of this injunction, and with any other subject we are not now required to meddle.   Case to be remanded.

ORDER AFFIRMED WITH COSTS.